Ben Travis (State Bar No. 305641)
ben@bentravislaw.com
**BEN TRAVIS LAW, APC**
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: 619-353-7966

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER REILLY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GRUNS NUTRITION, INC.,<br><br>Defendant. | Case No. 2:26-cv-09520<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>**<u>CLASS ACTION</u>** |

Plaintiff Alexander Reilly ("Plaintiff") brings this class action, on behalf of himself and all others similarly situated against Gruns Nutrition, Inc. ("Gruns" or "Defendant"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to himself.

## INTRODUCTION

1. This is a proposed class action brought on behalf of consumers of Defendant's sugar free gummies products[1] (collectively the "Products" or individually the "Product") who have purchased the Products with the misrepresentations on the front of the packaging that they contain zero sugar.

2. Defendant's marketing, labeling, and sale of the Products mislead reasonable consumers to believe that the Products contain zero sugar, by using the term "Sugar Free" on the front labels ("Sugar Free Representations").

3. However, these Sugar Free Representations are false. Defendant adds sugar to the Products in the form of allulose, which is a monosaccharide and therefore considered sugar under the applicable federal and California labeling standards.

4. By labeling the Products with the Sugar Free Representations, Defendant creates consumer deception and confusion. A reasonable consumer purchases the Products believing that they do not contain any sugar. However, a reasonable consumer would not deem the Products to be sugar free if they knew the products actually contained sugar.

5. Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff, and every other member of the Class, at every point of purchase and consumption throughout the Class Period.

---

[1] The products include the Superfoods Greens Gummies, Brain Support Gummies, Pre-Workout Energy Gummies and Immune-Support Gummies (*see* https://gruns.co/pages/usnacks). Plaintiff reserves the right to add additional items to this list based on discovery.

6. Plaintiff now brings this action to stop Defendant's misrepresentations and recover the monies he paid for the Products as a result of the misrepresentations, as well as the other relief detailed below.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which the putative Class exceeds 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

8. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in the State of California. Defendant sells its products to California residents through its website and other retailers as part of its ordinary course of business and directs advertising to California residents through digital and traditional marketing channels. Defendant is also registered to do business in California

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

10. **Plaintiff Alexander Reilly** is, and at all times mentioned herein was, an individual citizen of the State of California and resident of Los Angeles, California.

11. Plaintiff purchased one of Defendant's Products during the relevant statute of limitations period for personal and household consumption.

12. Plaintiff purchased the sugar free Superfoods Green Gummies on August 25, 2026 from Amazon to be shipped to his home in California. Plaintiff paid $36.99 for the Product exclusive of tax.

13. Plaintiff purchased the Product over other products in reliance on Defendant's representations that the Product was sugar free.

14. Plaintiff paid a premium price for the Product above the price of other similar products.

15. Plaintiff relied upon Defendant's misrepresentations in making his

decision to purchase the Product. Plaintiff suffered injury in that he would not have bought Defendant's Product had he known that the Product was not sugar free. Plaintiff would like to buy Defendant's Products in the future if and when they are in fact sugar free. He does not currently intend to do so because he cannot rely on the accuracy of the representations in deciding whether or not he should purchase Defendant's Products but would be able to do so once the Court issues an injunction. Plaintiff continues to shop at locations where the Products are sold and continues to be in the market for sugar free gummies.

16. **Defendant Gruns Nutrition, Inc.** is a Delaware corporation with its principal place of business in Texas.

17. Defendant is a nutritional supplement company.

18. On information and belief, the labeling for the Products, that Plaintiff and Class members relied upon in making their decisions to purchase the Products were conceived, designed, prepared and/or approved by Defendant and were disseminated by Defendant and its agents through labeling, marketing and advertising containing the misrepresentations, from its headquarters.

19. On information and belief, in committing the wrongful acts alleged herein, Defendant in connection with its subsidiaries, affiliates and/or other related entities and their employees planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendant participated in the making of such representations in that it disseminated misrepresentations or caused them to be disseminated.

## FACTUAL ALLEGATIONS

### A. CONSUMER DEMAND FOR SUGAR FREE PRODUCTS

20. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit

or avoid sugars in their diet[2].

21. That demand accords with uniform public-health guidance. The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake — and states that limiting them to 5 percent or less would provide additional health benefits.[3] The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[4]

22. Manufacturers are aware of this demand and of the premium consumers will pay. Products labeled "sugar free" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front of their packaging for the claims they believe will most motivate a purchase.

**B. MISREPRESENTATIONS**

23. Defendant's marketing and advertising of the Products gives consumers the impression that they are sugar free, by using the Sugar Free Representations.

24. However, contrary to the Products' representations and omissions, they are actually not sugar free because they contain between 6 and 9 grams of allulose per serving. Below is a screenshot of Defendant's website for the Superfood Greens Gummies:




---

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf (last accessed August 25, 2026).

[3] World Health Organization, Healthy Diet, https://www.who.int/news-room/fact-sheets/detail/healthy-diet (last accessed August 25, 2026).

[4] Added Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars (last accessed (August 25, 2026).

25. Defendant's labeling of the products with these representations demonstrates its intent to persuade customers that the Products are sugar free and are therefore higher quality and to justify the premium prices.

26. Examples of the front labels of the Products are below:







27. It is abundantly clear that Defendant's misrepresentations are false and misleading and are intended to be.

28. Reasonable consumers, including Plaintiff, purchased the Products based upon their belief that the Products were sugar free. However, a reasonable consumer would not deem the Products to be sugar free if they knew the Products contained sugar.

29. Defendant's misrepresentations cause confusion among consumers, who believe they are purchasing sugar free products, when, in fact, they are purchasing products that contain sugar.

30. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

**C. ALLULOSE IS A SUGAR**

31. Allulose is a sugar, which naturally occurs in foods such as figs, raisins,

maple syrup, and brown sugar[5].

32. From a chemical standpoint, allulose—also known as D-psicose—is a monosaccharide, or simple sugar.[6] It shares the same molecular formula as fructose and glucose and has the same atomic connectivity as fructose.

33. The FDA likewise identifies allulose as a monosaccharide, describing it as "a monosaccharide with a molecular formula of $C_6H_{12}O_6$" and "an epimer of D-fructose."[7] That classification places allulose directly within the FDA's regulatory definition of "sugars," which encompasses "the sum of all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii).

34. Other industry authorities have reached the same conclusion. The Calorie Control Council, a sweetener-industry trade association, similarly identifies allulose as a naturally occurring sugar and explains that it is a monosaccharide, or simple sugar, that the body absorbs but does not metabolize.[8]

35. Allulose functions as a sugar in food products as well as being chemically classified as one.

36. Therefore, a gummy sweetened with allulose is sweetened with sugar. The representation that it is sugar free is therefore false.

---

[5] Cleveland Clinic Health Essentials, What Is Allulose?, https://health.clevelandclinic.org/what-is-allulose (last accessed August 25, 2026).

[6] Han-Joo Maeng et al., *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 Foods art. 448 (2019), https://doi.org/10.3390/foods8100448 (last accessed August 25, 2026).

[7] FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 2 (Oct. 2020), https://www.fda.gov/media/123342/download (last accessed August 25, 2026).

[8] Calorie Control Council, *Allulose*, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last accessed August 25, 2026).

## DEFENDANT'S VIOLATIONS OF LABELING LAWS

**A. FDA**

37. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. The FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

38. FDA regulations distinguish information appearing within the Nutrition Facts panel from statements appearing elsewhere on a label. Information within the Nutrition Facts panel is not itself a nutrient-content claim, but the same information placed outside that panel is subject to the nutrient-content-claim regulations. 21 C.F.R. § 101.13(c). The challenged Sugar Free Representations are nutrient-content claims because they appear outside the Nutrition Facts panel and expressly represent that no sugar was added to the Products. 21 C.F.R. § 101.13(b)(1), (c).

39. The Sugar Free Representations are direct, quantitative statements about the amount of sugars and thus expressed nutrient-content claims. 21 C.F.R. § 101.13(b)(1), (c). Section 101.9(c)(6)(ii) defines sugars to include free mono- and disaccharides and sugars from syrups added during processing, and permits the amount of sugars to be expressed as zero only when a serving contains less than 0.5 grams. Defendant's own website discloses that the Products contain 6-9 grams of allulose per serving—amounts that greatly exceed the less-than-0.5-gram condition for expressing sugars as zero. As such, the Sugar Free Representations are impermissible nutrient-content claims.

40. Because the Products bear false, misleading, and impermissible outside-panel nutrient-content claims, they are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.13( (c), (i)(1), (i)(2), (i)(3), and (o), 101.60(c)(2), and 101.9(c)(6)(ii). Plaintiff does not seek to enforce the FDCA directly.

**B. Sherman Law**

41. California's Sherman Food, Drug, and Cosmetic Law, Cal. Health &

Safety Code § 109875, et seq. (the "Sherman Law"), adopts the federal food-labeling regulations as the law of California: "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state." Id. § 110100(a); see also id. § 110670. Every requirement of § 101.13 described above — measured, as those provisions require, by the definition of "sugars" in § 101.9(c)(6)(ii) —is therefore California law, and each of Defendant's violations of those federal requirements is equally a violation of California law.

42. Defendant's manufacturing, marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including: Section 110660 (a food is misbranded if its labeling is false or misleading in any particular); Section 110670 (a food is misbranded if its label does not conform to the nutrient-content-claim requirements of 21 U.S.C. § 343(r)); Section 110760 (unlawful to manufacture, sell, deliver, hold, or offer for sale any misbranded food); Section 110765 (unlawful to misbrand any food); and Section 110770 (unlawful to receive in commerce any misbranded food or to deliver it).

43. Plaintiff does not seek to enforce the Sherman Law directly.

## RELIANCE AND ECONOMIC INJURY

44. Plaintiff observed advertisements for Defendant's Products and saw the packaging of the Products on Amazon's website. Plaintiff observed from the labels that they were alleged to be sugar free.

45. When deciding to purchase the Products, Plaintiff sought to purchase a product that was completely sugar free.

46. Plaintiff expected Defendant's Products would be sugar free.

47. Plaintiff selected Defendant's Products instead of other products because he believed that, unlike other products, Defendant's products were sugar free.

48. Plaintiff understood the "Sugar Free Representations" on the label to indicate the Products were sugar free.

49. Plaintiff did not expect the Products to contain sugar.

50. Plaintiff saw and relied on the advertising identified herein, which misleadingly states the Products are sugar free when in fact they contain sugar.

51. Consumers do not view the fine print on the back label of the Products when purchasing everyday food items. The Products' front labels indicate they are sugar free. Further consumers, such as Plaintiff, expect the fine print on the back label to confirm, not correct, statements made on the front of the label. Therefore, Plaintiff did not view the statements on the Products' back label prior to purchasing the Products.

52. Plaintiff would not have purchased the Products if he knew the representations were false and misleading.

53. Plaintiff paid more for the Product than he otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

54. As a result of the false and misleading labeling, the Products are sold at a premium price compared to other similar products represented in a non-misleading way and are sold at a price that is higher than the price of the Products would have been if they were represented in a non-misleading way.

55. Plaintiff was also deprived of the benefit of the bargain because the Product he purchased was different than what Defendant warranted.

56. As a result of these unfair and deceptive practices, Defendant has likely collected money from the sale of its Products that it would not have otherwise earned. Plaintiff and Class members paid money for products that are not what they purport to be or what they bargained for. They paid a premium for such Products when they could have instead bought other, less expensive products.

57. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, Products labeled with the Sugar Free Representations.

As a result, Plaintiff and the Class members were injured in that they:

a. Paid a sum of money for the Products, which were not what Defendant represented;

b. Paid a premium price for the Products, which were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

d. Were of a different quality than what Defendant promised.

58. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and/or Plaintiff and the Class members would not have been willing to purchase the Products at all.

59. Plaintiff and the Class members paid for Products that were represented as being sugar free but received Products that contained sugar. The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

60. Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the label.

61. Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased and/or paid more for the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered an injury in fact, and lost money as a result of Defendant's wrongful conduct.

## NO ADEQUATE REMEDY AT LAW

62. Plaintiff is permitted to seek equitable remedies in the alternative because he lacks an adequate remedy at law.

63. The equitable claims Plaintiff asserts are not duplicative of, and do not require the same showings as, a claim for damages. The UCL and FAL reach unlawful and unfair conduct that a damages remedy may not fully redress, and their elements differ from those of a legal claim for damages. Plaintiff may therefore be able to establish liability and obtain restitution or disgorgement under these statutes even if he cannot prove every element required to recover damages.

64. Plaintiff seeks restitution and disgorgement under the UCL and FAL in the alternative to, and as a remedy distinct from a claim for damages under the CLRA. Recovery of CLRA damages turns on proof of elements that equitable claims do not require. If Plaintiff is unable to establish those additional elements, his legal remedy would be unavailable or incomplete, and equitable restitution and disgorgement of the money Defendant unlawfully collected would be the only means of making the Class whole. Because the adequacy of Plaintiff's legal remedy cannot be finally determined until the merits are resolved, his equitable claims may not be foreclosed at the pleading stage.

65. Plaintiff also seeks injunctive relief under the UCL, FAL and CLRA. Legal damages cannot remedy the imminent threat of future harm that Plaintiff and the Class face. Only injunctive relief can stop Defendant from continuing to advertise the Products with the Sugar Free Representations. Plaintiff would like to, and intends to, continue purchasing products from Defendant in the future, and would do so if he could trust that Defendant's representations are accurate. Absent an injunction, however, Plaintiff cannot rely on the accuracy of Defendant's representations; as a result, Plaintiff faces an ongoing and imminent risk of again purchasing a Product that is not sugar free. Because Defendant's practice is ongoing and directed at the general public, Plaintiff also seeks public injunctive relief prohibiting Defendant from advertising, displaying, or offering Products to the public that make the Sugar Free Representations.

## CLASS ACTION ALLEGATIONS

66. Plaintiff brings this action as a class action pursuant to Rule 23(a), (b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure on behalf of the following Class and Subclass.

**Nationwide Class**

All persons in the United States, who, within the applicable statute of limitations, purchased the Products for purposes other than resale.

**California Subclass**

All residents of California, who, within the applicable statute of limitations, purchased the Products for purposes other than resale.

67. Excluded from the Class are: Defendant, its assigns, successors, and legal representatives; any entities in which Defendant has controlling interests; and any Judicial officer to which this case is assigned, their immediate family and staff.

68. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise. Plaintiff also reserves the right to create additional subclasses.

69. **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are at least tens of thousands of class members in the Class. The identities of the Class Members are ascertainable and can be determined based on records maintained by Defendant.

70. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only individual class members. The questions of fact and law that are common to the Class members and predominate over questions that may affect individual Class members,

include:

1. whether Defendant misrepresented the amount of sugar in its Products;
2. whether Defendant's labeling, marketing, advertising, and/or selling of its products with misrepresentations constituted an unfair and/or deceptive trade practice;
3. whether Defendant participated in and pursued the common course of conduct complained of herein;
4. whether Defendant was enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the other Class members;
5. whether Defendant's labeling, marketing, advertising, and/or selling of its products with misrepresentations violated the CLRA;
6. Whether Plaintiff and the Class are entitled to injunctive relief; and
7. Whether Defendant was unjustly enriched by its unlawful conduct

71. **Typicality:** Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, purchased Defendant's Products bearing the misrepresentations in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

72. **Adequacy:** Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff is represented by experienced and competent Class Counsel. Class Counsel have litigated numerous class actions. Class counsel intend to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all of the members of the Class.

73. **Superiority:** The class action is superior to other available methods for

fairly and efficiently adjudicating this controversy because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There is no foreseeable difficulty in managing this action as a class action and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**COUNT I**

**Unfair and Deceptive Acts and Practices in Violation of the California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

**(By Plaintiff on Behalf of the California Subclass)**

74. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

75. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

76. Plaintiff and the other Class members are "consumers," as the term is defined by California Civil Code § 1761(d), because he and they bought the Products at issue for personal, family, or household purposes.

77. Plaintiff and Defendant, and the other Class members and Defendant, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

78. The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

79. As alleged more fully above, Defendant has violated the CLRA by misrepresenting to Plaintiff and the other Class members that its Products are sugar

free.

80. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), (a)(9) and (a)(16).

81. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order requiring Defendant to:

a. Remove and/or refrain from making statements representing that the products are sugar free and/or clarify on the front labels the true amount of sugar in the Products;

b. Conduct a corrective advertising campaign.

82. Plaintiff and the other Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

83. The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and the other Class members.

84. On information and belief, Defendant's actions were willful, wanton, and fraudulent.

85. On information and belief, officers, directors, or managing agents at Defendant authorized the use of the misleading statements about the Products.

86. Pursuant to Civil Code sections 1780 and 1782, Plaintiff and California Subclass members seek an injunction to bar Defendant from continuing its deceptive advertising practices, and reasonable attorneys' fees and costs. Plaintiff does not seek damages at this time.

**COUNT II**

**Violation of California's Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(By Plaintiff on Behalf of the California Subclass)**

87. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

88. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

89. **Unlawful Conduct.** Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9) and (a)(16), as well as violations of the Sherman Law, as alleged above.

90. **Unfair Conduct.** Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

91. Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly labeled products.

92. There is no benefit to consumers or competition from deceptively labeling products, other than to increase Defendant's own profits.

93. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class members.

94. **Fraudulent Conduct.** Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

95. The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and the Class members.

96. Defendant's representations and omissions deceived Plaintiff and the Class members about the content of sugar in the Products.

97. Defendant knew or reasonably should have known that its statements and

omissions concerning the Products were likely to deceive consumers.

98. Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly labeled products.

99. Plaintiff and the other Class members had no way of reasonably knowing that the products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

100. Defendant's violations of the UCL continue to this day. Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

a. Remove and/or refrain from making statements representing that the products are sugar free and/or clarify on the front labels the true amount of sugar in the Products;

b. Conduct a corrective advertising campaign;

c. Provide restitution to Plaintiff and the other Class members;

d. Disgorge all revenues obtained as a result of violations of the UCL; and

e. Pay Plaintiff's and the Class' attorneys' fees and costs.

**COUNT III**

**Violation of California's False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

**(By Plaintiff on Behalf of the Class)**

101. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

102. The False Advertising Law prohibits making any false or misleading advertising claim.

103. Defendant makes false and misleading advertising claims by deceiving consumers as to the amount of sugar in the Products.

104. In reliance on these false and misleading advertising claims, Plaintiff and the Class members purchased and consumed the Products without the knowledge that they were not sugar free.

105. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

106. As a result, Plaintiff and the Class members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**COUNT IV**

**Unjust Enrichment**

**(By Plaintiff on Behalf of the Nationwide Class)**

107. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

108. Plaintiff brings this cause of action on behalf of himself and all members of the Nationwide Class.

109. Plaintiff pleads this claim for unjust enrichment in the alternative to his claims, and only to the extent the Court determines that Plaintiff lacks an adequate remedy at law.

110. Defendant's Sugar Free Representations caused Plaintiff and Class Members to pay for products that were not as advertised. Plaintiff and Class members conferred a benefit on Defendant. Defendant was aware of, accepted, and retained that benefit.

111. Defendant obtained this benefit through the unfair and deceptive conduct alleged herein.

112. Under principles of equity, Defendant should not be permitted to retain the money it obtained from Plaintiff and the Class by means of the conduct alleged

herein. It would be unjust and inequitable for Defendant to retain those amounts.

113. Plaintiff and the Class are entitled to restitution of the money Defendant wrongfully obtained, disgorgement of the amounts by which Defendant was unjustly enriched, and the imposition of a constructive trust over those amounts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and the Class as follows:

A. An order certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

B. A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C. A declaration that Defendant has committed the violations alleged herein;

D. An award of restitution for Class members;

E. An award of disgorgement for Class members;

F. An order enjoining Defendant's unlawful and deceptive acts and practices, and requiring it to correct the misrepresentations and requiring a corrective advertising campaign;

G. Injunctive relief for Class members;

H. An order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees;

I. An order awarding prejudgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

J. Any further relief that the Court may deem appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all claims so triable.

Dated: August 25, 2026

**BEN TRAVIS LAW, APC**
By: *<u>/s/ Ben Travis</u>*
Ben Travis (State Bar No. 305641)
ben@bentravislaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: 619-353-7966

Attorney for Plaintiff

**VENUE AFFIDAVIT**

I, Alexander Reilly, declare and state as follows:

1. I am the named Plaintiff in this action and make this affidavit pursuant to California Civil Code § 1780(d).

2. The Complaint in this action is filed in a proper place for trial of this action because Defendant is doing business in the County of Los Angeles. Furthermore, I made a purchase from Defendant while in the County of Los Angeles.

I declare under penalty of perjury under the laws of the state of California and the United States that the foregoing is true and correct.

Executed on 08/25/26 in Los Angeles, California.

ALEXANDER REILLY